UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA DOLORES ACEVES-SANTOS, ) <br> Alien No. 92-716-932                     ) <br>                                                           ) <br>           Petitioner,                              ) <br>                                                           ) <br> v.                                                      ) <br>                                                           ) <br> DANIEL J. SEDLOCK, JR., Chief of ) <br> Corrections, McHenry County Adult   ) <br> Corrections Facility; KEITH NYGREN, ) <br> Sheriff, McHenry County, Illinois;        ) <br> GLEN TRIVELINE, Field Office          ) <br> Director of Detention and Removal    ) <br> Operations, Chicago Field Office,      ) <br> Immigration and Customs Enforcement, ) <br>                                                           ) <br>           Respondents.                          ) | Case No. <br> Petition for Writ of Habeas Corpus <br><br> FILED: AUGUST 11, 2008 <br>      08CV4550 <br>      JUDGE DARRAH <br>      MAGISTRATE JUDGE COX <br>      NF |

**PETITIONER'S MEMORANDUM OF LAW
IN SUPPORT OF HER PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

Maria Dolores Aceves-Santos ("Ms. Aceves") is a lawful permanent resident of the United States and the mother of two United States citizen children. She has been physically abused since her childhood, and suffers from a serious mental illness. For nearly a year, the Government has detained Ms. Aceves at various county jails while it pursues removal proceedings against her for shoplifting and for using another person's credit card to obtain necessities for herself and her children. Recently Ms. Aceves was granted "Withholding of Removal" relief, meaning that she cannot be deported to Mexico. However, the Government has made clear that it will appeal the Immigration Judge's (IJ) decision to grant that relief and will continue to detain her throughout the process.

1

The Government's almost year-long detention of Ms. Aceves violates due process because it bears no reasonable relation to a legitimate governmental purpose and has been imposed without even the most minimal procedural safeguards. This Court, however, need not reach the serious constitutional questions posed by Ms. Aceves's detention. The rule of constitutional avoidance compels the conclusion that no statute authorizes Ms. Aceves's prolonged detention absent a constitutionally adequate custody hearing. This Court should construe the statute as not providing such authority, and should order Ms. Aceves's immediate release.

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

**A. Background**

Ms. Aceves first came to the United States with her mother from Mexico when she was four-years-old. Petition for Writ of Habeas Corpus, ¶ 26. She has been a lawful permanent resident of the United States since December 12, 1989. *Id*. Ms. Aceves has two U.S. citizen daughters—Erika (11) and Bekah (7). *Id*. at ¶2. For most of her life, Ms. Aceves has been abused, first by her mother, then by a friend of her stepfather, and most recently by her boyfriend. From a young age, Ms. Aceves's mother physically and emotionally abused her. *Id*. at ¶ 27. She beat her daughter with hangers and threw objects at her. *Id*. When Ms. Aceves was eight-years-old, she was sexually molested by a friend of her stepfather. *Id*. She repeatedly reported this abuse to her mother, who did not believe her. *Id*. Ms. Aceves later ran away and spent most of her teenage years homeless. *Id*. When she was sixteen, she attempted to commit suicide. *Id*. at ¶ 28.

In September 2000, Ms. Aceves met Adrian Morales, a man from Cuernavaca, Mexico, who has no immigration status in the United States. *Id*. at ¶ 30. Mr. Morales and Ms. Aceves began dating, and eventually moved in together. *Id*. During the four years that the couple lived

together, Mr. Morales regularly beat Ms. Aceves. *Id*. at ¶ 31. Sometimes he beat her so badly that he knocked her unconscious. *Id*. He slapped her, kicked her in the face, beat her with pieces of wood, and threw objects at her. *Id*. When neighbors would call the police, Mr. Morales would keep Ms. Aceves silent by threatening her with a box cutter. *Id*. At times, he forced her to have sex with him. *Id*. He frequently threatened that he would kill her, and hurt her mother, brother, and children. *Id*. He also frightened Ms. Aceves with stories of the crimes that he committed while a member of the *Judicial*—the Mexican Federal Police. *Id*. at ¶ 32. For example, he told her that he and other Judicial members gang-raped a fifteen-year-old girl at a mall. *Id*. He told her that he "has killed before and will not hesitate to do it again." *Id*.

In early 2004, Ms. Aceves filed a police report stating that Mr. Morales had sexually abused her eight-year-old daughter, Erika Aceves. *Id*. at ¶ 33. Erika was later examined by a doctor at Wishard Pediatric Center in Indianapolis, who confirmed that her hymen was broken, and that she suffered from regular vaginal bleeding and vaginal scarring. *Id*.

Ms. Aceves cooperated fully with the police investigation of Mr. Morales. *Id*. at ¶ 34. When questioned by the police, Erika eventually identified Mr. Morales as her abuser. *Id*. The police requested that Mr. Morales appear for DNA testing, but he did not do so, and he remains at large today. *Id*.

In 2005, Ms. Aceves was diagnosed at the Wabash Valley Community Support Program as suffering from schizo-affective disorder, bipolar type. *Id*. at ¶ 37. After being diagnosed, she was prescribed a medication called Abilify, which she says made her feel normal for the first time. *Id*.

## B. The Government's removal case

On August 8, 2003, during her brutally abusive relationship with Mr. Morales, Ms. Aceves was convicted in the Superior Court of Tippecanoe County, Indiana, for theft, and given a six-month sentence of incarceration, and a one-year suspended sentence of incarceration. *Id*. at ¶ 35. On July 18, 2005, she was convicted of check deception, and given a one-year suspended sentence. *Id*. at ¶ 36. Ms. Aceves testified that she stole to obtain necessities like "groceries, baby clothes, and diapers." *Id*. In addition, she testified that on at least one occasion she wanted to get arrested to escape from Mr. Morales. *Id*.

On July 12, 2007, the Department of Homeland Security (DHS) served Ms. Aceves with an NTA, alleging that she was removable for having been convicted of an aggravated felony. *Id*. at ¶ 38. On approximately August 22, 2007, DHS took her into custody. *Id*. Between August 22, 2007, and September 26, 2007, Ms. Aceves appeared for various "master calendar" hearings pro se. *Id*. at ¶ 39. A "master calendar" hearing is a kind of preliminary hearing in immigration court, as opposed to a full evidentiary hearing on the merits of the immigrant's case. On September 26, 2007, the Legal Assistance Foundation of Metropolitan Chicago entered its appearance on behalf of Ms. Aceves. *Id*. at ¶ 40.

During this period of master calendar hearings, a pleading was taken on the charges, and Ms. Aceves filed an I-589 application for CAT and Withholding of Removal. *Id*. at ¶ 42. These applications were based on her fear of persecution and torture at the hands of her ex-boyfriend's friends in the Mexican Federal police and on her fear that she will be forcibly institutionalized in Mexico in an unsafe mental health facility under conditions tantamount to torture. *Id*.

4

At the same time, Ms. Aceves also filed an application for a U visa with the USCIS Vermont Service Center.[1]  *Id*. at ¶ 43.  In support of her U visa application, she submitted extensive evidence of the police investigation of Mr. Morales and her cooperation with the police, including eleven pages of police reports, a medical report, and a twenty-two-page transcript of a police interview with Ms. Aceves.  *Id*.  In connection with her U visa application, Ms. Aceves requested a waiver of her criminal convictions.[2]  *Id*.  Ms. Aceves's U visa application has not yet been adjudicated.  *Id*.  She has asked the USCIS Vermont Service Center to expedite adjudication of the application on four occasions: October 24, 2007; February 26, 2008; April 4, 2008; and May 22, 2008.  *Id*.

On January 16, 2008, Ms. Aceves had her individual calendar hearing before the IJ, who denied her applications for Withholding of Removal and CAT relief and ordered her removal.  *Id*. at ¶ 44.  He did not address Ms. Aceves's Withholding of Removal claim based on her membership in the social group of mentally ill persons who require acute medical care or her CAT claim that she will be subjected to forced psychiatric commitment in Mexico under conditions amounting to torture.  *Id*.

On January 28, 2008, Ms. Aceves filed a notice of appeal with the Board, which on April 17, 2008, remanded Ms. Aceves's case for the IJ to consider her Withholding of Removal and CAT claims related to her fear of persecution on account of her membership in the particular

---

[1] Under 8 U.S § 1101(a)(15)(U) an alien is entitled to a U visa if DHS determines that (i) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity, (ii) the alien possesses information concerning the criminal activity, (iii) the alien has been helpful to law enforcement authorities in investigating and prosecuting the criminal activity, and (iv) the criminal activity violated the laws of the United States or occurred in the United States.  An alien granted a U visa can eventually adjust status and become a lawful permanent resident of the United States.  8 U.S.C. § 1255.

[2] U visa applicants are eligible for such a waiver for any ground of inadmissibility other than participation in Nazi persecution, genocide, or any act of extrajudicial killing.  *See* 8 U.S.C. § 1182(d)(14).

social group of persons in need of acute psychiatric treatment. *Id*. at ¶¶ 45, 47. After the case was remanded, a hearing was not scheduled before the IJ who had conducted Ms. Aceves's merits until June 9, 2008. *Id*. at ¶ 50. On May 30, 2008, Ms. Aceves filed additional documents in support of her claim in accordance with the local operating procedure requiring the filing of documents ten days prior to an individual hearing. *Id*. at ¶ 51. On June 9, 2008, the Government requested leave to file a response to the additional documents filed by Ms. Aceves. *Id*. at ¶ 52. The IJ granted the Government's request and continued Ms. Aceves's individual hearing to July 2, 2008. *Id*. However, the Government did not file any response, and on July 2, 2008, the IJ barred it from making any additional argument. *Id*. at ¶ 58. The IJ then continued the case until August 4, 2008, for it to issue a decision on the case. *Id*. The Government announced in open court that, if it loses, it will appeal. *Id*. On August 4, 2008, on remand, the IJ simultaneously ordered that Ms. Aceves be removed to Mexico and granted her application for Withholding of Removal. *Id*. at ¶ 59. The Government reserved appeal, and stated its position that Ms. Aceves must remain subject to mandatory detention during the time that it appeals. *Id*. at ¶ 60.

**C.     Ms. Aceves's Detention**

Since August 22, 2007, Ms. Aceves has been in custody at various county jails in Illinois and Kentucky. For much of this time, she has not received appropriate treatment for her mental illness. She has also been unable to see her children, Erika and Bekah, who have mostly been in the custody of Ms. Aceves's mother.

In approximately early June 2008, a physician associated with the McHenry County Detention Center prescribed Ms. Aceves an antidepressant named Remeron, which is not FDA-approved for bipolar individuals. *Id*. at ¶ 53. After being prescribed Remeron, Ms. Aceves complained that it made her sleepy and asked to have her dosage reduced. *Id*. at ¶ 54. In

approximately early June 2008, Ms. Aceves backwashed her Remeron tablet into her drinking cup. *Id*. at ¶ 55. The detention center placed Ms. Aceves in a disciplinary proceeding because of this incident. *Id*. At her disciplinary hearing, Ms. Aceves stated that she backwashed her Remeron tablet because she had intended to break it in half and take only half the tablet. *Id*. On June 11, 2008, McHenry placed Ms. Aceves in solitary confinement for five days as a punishment for backwashing her Remeron tablet. *Id*. at ¶ 56. At approximately the same time, the McHenry staff reduced Ms. Aceves's prescribed dosage of Remeron. *Id*. at ¶ 57.

## ARGUMENT

I.  **Ms. Aceves's Detention Violates Her Right to Due Process under the Fifth Amendment.**

   A.  **Immigration detention violates due process absent a reasonable relation to a legitimate government purpose and adequate procedural safeguards.**

This case involves prolonged and potentially indefinite detention in contravention of Ms. Aceves's rights under the Due Process Clause of the Fifth Amendment. "Freedom from imprisonment – from Government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). For this reason, detention violates due process unless it is reasonably related to its purpose. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *Zadvydas*, 533 U.S. at 690.

The primary purpose of immigration detention is to assure a noncitizen's appearance and removal. *Zadvydas*, 533 U.S. at 697 (discussing post-removal order detention); *Demore v. Kim*, 538 U.S. 510, 513, 528 (2003) (discussing pre-final-order detention). Protecting the community from danger is also a legitimate – but secondary – Government purpose. *Zadvydas*, 533 U.S. at 697.

In *Zadvydas* the Supreme Court found that noncitizens have a liberty interest triggered by immigration detention. *Id.* at 690-91. The Court held unequivocally that detention requires a

"sufficiently strong special justification" to outweigh the significant deprivation of liberty, as well as "strong procedural protections." *Id.* Moreover, as detention becomes prolonged, the deprivation of liberty becomes greater, requiring an even stronger justification and more rigorous procedural protections. *See Kansas v. Hendricks*, 521 U.S. 346, 368 (1997) (upholding involuntary civil commitment for periods of one year at a time, subject to "strict procedural safeguards" including right to jury trial before state court and burden of proof beyond a reasonable doubt).

### B. Ms. Aceves's detention is not reasonably related to its purpose.

Ms. Aceves's detention has become unreasonably prolonged and her removal is not likely in the reasonably foreseeable future. She has been detained for nearly a year as of this writing. This amount of time is clearly prolonged for purposes of a due process analysis. Indeed, in *Zadvydas v. Davis*, the Supreme Court, applying the doctrine of constitutional avoidance, held that due process concerns required it to read the post-removal order detention statute as not authorizing detention for more than six months if there is "no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Likewise, in *Demore v. Kim*, the Supreme Court upheld mandatory detention under 1226(c), the provision which applies here, but only for the "**brief** period necessary for [completing] removal proceedings." 538 U.S. at 513 (emphasis added). The *Demore* court stressed "[t]he very limited time of the detention at stake under 1226(c)," and relied heavily on the Government's representations that such detention lasts "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 529.

Since *Demore*, the circuit courts considering the issue have rejected the Government's argument that the Supreme Court upheld the constitutionality of detention pending the completion of removal proceedings regardless of its length. *See Casas-Castrillon v. DHS*, No.

8

07-56261, 2008 WL 2902026, at *4 (9th Cir. July 25, 2008) (holding that at some point during petitioner's seven-year detention, the Government's authority to detain him shifted from the mandatory provisions of Section 1226(c), which do not require a hearing, to the discretionary provisions of Section 1226(a), which do require a hearing); *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005) (finding that two years and eight months of mandatory detention raised serious constitutional problems and therefore construing Section 1226(c) to require an IJ bond hearing where Government bears the burden of justifying continued detention); *Ly v. Hansen*, 351 F.3d 263, 268, 271-72 (6th Cir. 2003) (construing Section 1226(c) as authorizing detention only for "a time reasonably required to complete removal proceedings in a timely manner," and finding one and a half years of detention "especially unreasonable" where no chance of actual removal existed).

The Seventh Circuit has accepted the validity of this reasoning, suggesting in *Hussain v. Mukasey* that "inordinate delay" may justify habeas relief. 510 F.3d 739, 743 (7th Cir. 2007). There is evidence of just such inordinate delay in Ms. Aceves's case. Although Case Completion Guidelines for IJs require completion of detained cases with relief applications within 90 days, Ms. Aceves did not obtain a merits decision from the IJ until January 16, 2008, five months after she was taken into custody. It took Ms. Aceves another four months to obtain a decision on appeal, and another four months to get a merits hearing on remand. Because the Government has announced it will appeal the IJ's decision to grant Withholding of Removal relief, the length of Ms. Aceves's detention still has no end in sight.

The unreasonableness of Ms. Aceves's detention is demonstrated not only by its length to-date but also by two additional factors: (1) that her removal is unlikely to occur in the

reasonably foreseeable future, s*ee*, *e.g*., *Ly*, 351 F.3d at 271-72; *Tijani*, 430 F.3d at 1242, and (2) that her treatment at the detention center has been, at the very least, substandard.

First, it has been nearly a year since first being taken into ICE custody that Ms. Aceves has finally received a decision on her Withholding claim. When the Government appeals, as it has indicated it will, it will have a difficult time meeting its high burden in showing that the IJ's grant of relief was clearly erroneous. Moreover, in the unlikely event that the Government wins its appeal before the Board, Ms. Aceves will seek review of the Board's decision before the Seventh Circuit, a process that will take additional months, if not years. *See Tijani*, 430 F.3d at 1242 (noting appellate court review of removal order, even subsequent to filing of Government's opposition, would take "a year or more"). Much like the petitioner's detention in *Ly*, Ms. Aceves's detention is "especially unreasonable" because there [is] little chance she could ever be removed." 351 F.3d at 272; *see also Nadarajah v.Gonzales*, 443 F.3d 1069 (9th Cir. 2006).

Secondly, Ms. Aceves's treatment at the McHenry County Detention Center adds to the unreasonableness of her detention. Diagnosed with schizo-affective disorder, bipolar type, Ms. Aceves normally takes a drug called Abilify. However, a doctor associated with McHenry prescribed Remeron for her, even though Remeron has not been approved by the FDA to treat bi-polar individuals. When Ms. Aceves backwashed this medically inappropriate medication into her drinking cup, she was placed in solitary confinement for five days.

**C.    Ms. Aceves has not received the procedural protections due process requires to justify prolonged detention.**

The Supreme Court stressed in Zadvydas that danger-based detention survives due process scrutiny only if "limited to especially dangerous individuals and subject to strong

procedural protections." 533 U.S. at 690-91. Ms. Aceves unquestionably has not received the benefit of any "strong procedural protections." In reality, she has been given none.[3]

Strikingly, even those immigration statutes providing for the detention of alien terrorists offer greater procedural protections than those available to Ms. Aceves. For example, the Alien Terrorist Removal statute provides lawful permanent residents in removal proceedings as alien terrorists with a bond hearing, in which an alien may be released based upon an individualized determination of flight risk and dangerousness. *See* 8 U.S.C. § 1536(a)(2)(A). Ms. Aceves, who stole necessities for her family, is given less due process than those accused of terrorism.

## II.     No Statute Authorizes Ms. Aceves's Detention.

As set forth above, Ms. Aceves's prolonged detention raises serious constitutional problems. This Court need not, however, and should not, decide those issues, because traditional rules of statutory construction, including the canon of constitutional avoidance, compel the conclusion that no detention statute permits Ms. Aceves's prolonged detention absent a constitutionally adequate hearing.

### A.     The rule of constitutional avoidance requires construing statutes to avoid constitutional problems.

The rule of constitutional avoidance dictates reading a statute so as not to authorize unconstitutional action unless no other construction of the statute is even "fairly possible." *Zadvydas*, 533 U.S. at 689; *see also Crowell v. Benson*, 285 U.S. 22, 62 (1932). This canon "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious

---

[3] A so-called "Joseph Hearing" for contesting that an alien has been convicted of an aggravated felony and is thus not subject to mandatory custody, is unavailable to Ms. Aceves, who cannot deny that her shoplifting offense meets the statutory definition of an "aggravated felony." *See Matter of Joseph*, 21 I. & N. Dec. 799 (BIA 1999). *See also Tijani* 430 F.3d at 1243 (Tashima, J., concurring) (explaining the constitutional infirmities of the *Joseph* hearing).

11

constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005); *see also Jideonwo v. INS*, 224 F.3d 692, 700 n.7 (7th Cir. 2000).

The Supreme Court has consistently applied the canon of constitutional avoidance to immigration statutes. In *Zadvydas*, the Court held that the general detention statute governing post-final order detention, 8 U.S.C. § 1231(a)(6), is insufficiently clear to authorize prolonged and indefinite detention. *Zadvydas*, 533 U.S. at 697 ("if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms"); *see also id.* at 689, 699. In *Clark*, the Court adopted the same rule of construction to read a similar time limitation into the statute with respect to detention of inadmissible aliens. 543 U.S. 386-87. Indeed, even if the detention statute did not pose serious constitutional problems as applied to Ms. Aceves, this Court would still be required to construe it to avoid constitutional problems that would arise in other cases. As Justice Scalia explained in *Clark*, "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail – whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark*, 543 U.S. at 380-81.

**B. The rule of constitutional avoidance requires construing the applicable statute as not authorizing prolonged mandatory detention.**

Immigration detention can be authorized by three separate provisions of the INA: Sections 1226(a), 1226(c), or 1231. *Casas-Castrillon v. DHS*, 2008 WL 2902026 at *2. The statutory basis for custody often shifts; for example, Ms. Aceves's detention is currently governed by Section 1226, but if the Government loses its appeal to the Board, it may argue that it can continue detaining Ms. Aceves pursuant to Section 1231 while it allegedly attempts to

remove her to a country other than Mexico.[4]  In *Zadvydas,* the Supreme Court has already applied a constitutional avoidance analysis to find that Section 1231 does not authorize prolonged immigration custody without appropriate procedural safeguards, and the same logic holds true for Section 1226.  Like Section 1231, Section 1226(c) is silent as to the length of detention authorized.  Thus, the statute simply does not speak to the possibility that the removal process could take years, not the brief period considered in *Demore*.  The statute also does not speak to the possibility that the individual cannot be removed, for example because she has been granted Withholding of Removal.[5]

In the absence of clear language to the contrary, the rule of constitutional avoidance dictates that Section 1226(c) be construed not to authorize mandatory detention beyond the brief period contemplated by the Supreme Court in *Demore*.  This is precisely the result reached by both the Sixth and Ninth Circuits, the only other Courts of Appeal to consider this issue since *Demore*.  In *Ly*, the Sixth Circuit avoided the constitutional problem by construing Section 1226(c) as permitting detention only "for a time reasonably required to complete removal proceedings in a timely manner." 351 F.3d at 268.

In *Casas-Castrillon*, the Ninth Circuit held that Section 1226(c) does not authorize prolonged mandatory detention after an alien's administrative proceedings are complete.  2008 WL 2902026 at *7; *see also Tijani*, 430 F.3d at 1242; *see also Nadarajah*, 443 F.3d at 1079-80.  Instead, the court held that the authority to detain shifts to Section 1226(a), "*requiring* the Attorney General to provide the alien with…a hearing." *Id*.  The *Casas-Castrillon* Court also

---

[4] Since Ms. Aceves has no claim to citizenship to any other country, the Government's effort to remove her elsewhere would be futile.

[5] If the Government fails to timely appeal or loses its appeal, it may continue to hold Ms. Aceves in custody for a pro forma ninety-day "removal period." The principals of constitutional avoidance that Ms. Aceves sets out in this brief dictate that this Court interpret Section 1231 as not authorizing such detention.

added that "[such] an alien is entitled to release on bond unless the government establishes that he is a flight risk or will be a danger to the community." *Id*. (internal citation omitted).

Similarly, here, the doctrine of constitutional avoidance requires construing Section 1226(c) to avoid the grave constitutional problems caused by reading it to permit detention, such as Ms. Aceves's, far in excess of the brief period reasonably required to complete removal proceedings. This Court should order Ms. Aceves's immediate release.

## CONCLUSION

For the foregoing reasons, this Court should grant Ms. Aceves's petition for a writ of habeas corpus.

Dated: August 11, 2008            By:    /s Geoffrey Heeren


GEOFFREY HEEREN
LEGAL ASSISTANCE FOUNDATION
111 W. Jackson Boulevard
Third Floor
Chicago, IL 60604
Telephone: (312) 347-8398