UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA DOLORES ACEVES-SANTOS | ) | |
| | ) | |
| Petitioner, | ) | No. 08 C 4550 |
| | ) | |
| v. | ) | Judge Darrah |
| | ) | |
| DANIEL SEDLOCK, CHIEF OF CORRECTIONS, | ) | |
| McHENRY COUNTY JAIL, KEITH NYGREN, | ) | |
| SHERIFF, MCHENRY COUNTRY, ILLINOIS, | ) | |
| GLENN TRIVELINE, FIELD OFFICE DIRECTOR | ) | |
| DETENTION AND REMOVAL OPERATIONS, | ) | |
| CHICAGO FIELD OFFICE, IMMIGRATION & | ) | |
| CUSTOMS ENFORCEMENT, | ) | |
| | ) | |
| Respondents[1]. | ) | |

## RETURN TO THE HABEAS PETITION

The respondents, by and through their attorney, PATRICK J. FITZGERALD, the United States Attorney for the Northern District of Illinois, hereby submits their return pursuant to 28 U.S.C. §2243 ¶1 to the petition for writ of habeas corpus filed by petitioner.

### Introduction

Petitioner Aceves-Santos, a native and citizen of Mexico, has filed this case challenging her mandatory detention as an aggravated felon while she awaits a final decision on her removal proceedings. (Petit. ¶8). Petitioner also challenges the legal basis for her detention pending her removal, which she believes is not reasonably foreseeable, as she has been granted withholding of

---

[1] Petitioner identifies the McHenry County Sheriff and Corrections Chief in this habeas petition, as they are considered the wardens of petitioner while he is detained at McHenry County Jail. However, pursuant to Seventh Circuit precedent, they are the only proper respondents to a habeas petition, therefore Glenn Triveline, as Field Office Director should properly be dismissed as a named respondent in this matter. *See Kholyavskiy v. Achim,* 443 F.3d 946 (7th Cir. 2006).

removal to Mexico by an immigration judge. (Petit. ¶ 10, 23). The immigration judge issued a decision granting her relief from removal in the form of "withholding of removal" under Section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §1231(b)(3). (*See* Petition Ex. B). While the immigration judge has granted petitioner this form of relief, there remains an order of removal entered on August 4, 2008, which the government has appealed. (Govt. Ex.1). Thus petitioner's custody is based upon the statutory authority found at 8 U.S.C. Sec. 1226(a) and (c) which mandate that the Attorney General, through his delegates and custodians, detain an individual such as Aceves-Santos who has been convicted of an aggravated felony. Respondents maintain that the Department of Homeland Security, Immigration and Customs Enforcement, has properly detained petitioner pursuant to Section 236(c), 8 U.S.C. §1226(c) of the Immigration and Nationality Act (INA) throughout the duration of her removal proceedings as petitioner is an aggravated felon based upon her theft conviction. *See* 8 U.S.C. §1226(c)(1)(B): "The Attorney General shall take into custody any alien who---- (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(iii)." *See also*, Petit. Ex B, Immigration Judge Decision, finding that petitioner is an aggravated felon.

### Facts

Petitioner is a native and citizen of Mexico, who is a lawful permanent resident of the United States. She is an aggravated felon, having been convicted three times for various forms of theft ranging from forgery in 2000, theft in 2003, and check deception in 2005. (Petit. Ex. B, p.2). She is also, by her own admissions, in the opinion of an expert witness who testified at her removal hearing, and in the legal opinion of the immigration judge, "mentally disabled" and "in need of acute psychiatric or psychological care." (*Id.*). She was taken into the custody of the respondents on or

about August 22, 2007, based upon her criminal convictions and the initiation of removal proceedings against her by ICE. Petit. ¶5. The immigration judge also found that it was more likely than not that petitioner "will suffer a 'psychotic break' or similar event. *Id.* at p. 12. Based upon these findings of fact developed throughout the removal proceedings in this case, petitioner was ordered removed to Mexico, but granted relief from removal to Mexico in the form of Withholding of Removal pursuant to 8 U.S.C. Sec. 1241(b)(3) of the Immigration and Nationality Act (INA). That decision of the immigration judge was entered on August 4, 2008, and the government has filed a Notice of Appeal to the Board of Immigration Appeals (BIA) of that decision. (Govt. Ex. 1). Because the government has filed an appeal of the immigration judge's order, that appeal stays the execution of the order until the appeal is decided. 8 C.F.R. §1003.6(a).

## Argument

I.  **Petitioner's Detention Pending the Completion of Her Removal Proceedings Is Lawful as It Is Mandated by Statute Because She is An Aggravated Felon.**
    **A. Petitioner is Properly Detained Pursuant to the Mandatory Detention Statute.**

Petitioner is a criminal alien who seeks immediate release from the custody of ICE while her removal proceedings are ongoing, despite the mandatory custody provisions of the immigration statute which have been upheld as constitutional by the Supreme Court. *Demore v. Kim*, 538 U.S. 510 (2003). The issue of petitioner's detention during the removal proceedings pursuant to Section 1226(c) is governed by Section 1226(a) of the INA which states that an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. A criminal alien who has been convicted of an aggravated felony is considered to be a "deportable alien," and "shall, upon the order of the Attorney General, be removed . . ." 8 U.S. C. §1227(a), and (a)(2)(A)(iii). *See* 8 U.S.C. §1226(c)(1)(B); *see also Al-Bareh v. Chertoff,* 552 F.Supp. 2d 794, 796

(N.D. Il. May 7, 2008). Because the government has filed an appeal of the immigration judge's decision to the Board of Immigration Appeals (BIA), petitioner Aceves-Santos does not yet have a final order of removal. (Govt Ex. 1); *See* 8 C.F.R. §§ 1003.38(b) and 1003.39. Despite petitioner's claims to the contrary, her mandatory detention as an aggravated felon during removal proceedings is reasonable and such detention has been held to be constitutional as well. *See Demore v. Kim,* 538 U.S. 510 (2003); *Hussain v. Mukasey,* 510 F.3d 739, 742 (7th Cir. 2007).

After the Attorney General or his delegate takes an alien into custody and orders him detained under section 1226(c), a "*Joseph* hearing" before an IJ is "immediately provided" if the alien claims he or she is not subject to mandatory detention. *See In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999)(noting that a *Joseph* hearing provides an alien "the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention"); *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)(explaining that an IJ may redetermine the initial custody and bond determination of the district director any time before a final deportation order). "At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 1712 n.3 (2003).

The IJ's ultimate detention decision "may be based upon any information that is available to the [IJ] or that is presented to him or her by the alien or the Service." 8 C.F.R. § 1003.19(d). If the IJ determines the alien does fall within section 1226(c), then he is without authority to conduct an individualized bond determination. See 8 C.F.R. § 1003.19(h)(1)(i)(E). However, if the IJ determines the alien does not fall within section 1226(c), then he may consider the question of bond.

*See In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999)("A determination in favor of an alien on this issue does not lead to automatic release. It simply allows an [IJ] to consider the question of bond. ..."). The IJ's ruling may be appealed to the BIA for review under the same governing principles. See 8 C.F.R. §§ 236.1(d)(3) and 1236.1(d)(3). In this case, petitioner Aceves-Santos has conceded the allegations of fact that established her removability as an aggravated felon, thus she is within the terms of the mandatory detention statute because she has been convicted of forgery and theft, offenses listed as aggravated felonies in the immigration statute at 8 U.S.C. § 1101(a)(43)(R). Nevertheless, she asserts that her continued detention beyond the 12 months she has been held violates her right to due process.

**B. Petitioner's Mandatory Detention is Constitutional and Due Process is Satisfied.**

Petitioner seeks habeas corpus relief because she claims that her detention under §1226(a) of the INA is in violation of her constitutional rights largely because the "[g]overnment has unreasonably delayed in adjudicating [her] removal case." (Petit. ¶10). All of the factors to which petitioner appears to attribute blame for the delay in her proceedings do not establish a violation of her due process–many of those factors may be attributed to the court process, administrative issues, and petitioner's appeal to the BIA. *See e.g.,* Petit. ¶10: "[a]nother 5 months later, the Board remanded her case to the IJ . . .the IJ was forced to continue the case for more than another month for his decision because the courtroom was not available. . ." These factors do not suggest that there has been such a deprivation of due process that the court should find her detention unreasonable, let alone unconscionable. *Al-Bareh v. Chertoff*, 552 F.Supp. 2d 794, 797, citing *Hussain v. Mukasey,* 510 F.3d 739, 742 (7th Cir. 2007). Based upon the nature of her case, the applications for relief involved, the expert testimony offered, as well as the fact that the case has already been up to the

BIA and remanded back, it is clear that the case has had an extended time line. However, this does not entitle an aggravated felon to immediate release from mandated custody.

The Fifth Amendment entitles aliens to due process of law in deportation proceedings. *Reno v. Flores,* 507 U.S. 292, 306 (1993). In *Flores*, the Supreme Court held that the due process clause of the Fifth Amendment includes a substantive component that forbids the government from infringing on an alien's fundamental liberty interests without narrowly tailoring the infringement to serve a compelling government objective. *Id.* at 302. However, as an alien who has been convicted of an aggravated felony in the United States, there is no constitutional, statutory, or regulatory right to be at liberty in the United States prior to the entry of a final, administrative order in removal proceedings. *See Carlson v. Landon,* 342 U.S. 524, 537-42 (1952); *Shaughnessy v. United States, ex rel. Mezei,* 345 U.S. 206 (1953); Section 1226(a)(1) of the INA, 8 C.F.R. §1236.1(d)(1). "An alien subject to detention under section 236(a) of the Act bears the burden of establishing that he is not likely to abscond, is not a threat to the national security, and is not a threat to the community. *See Matter of Adeniji,* 22 I&N Dec. 1102, 1111-12 (BIA 1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered, upon habeas corpus review, the liberty interests of two resident aliens who challenged the constitutionality of their detentions following a final order of removal. *Id*. at 684-86. After the final ordered of removal was entered, the INS could not find a country that would accept them, yet the government continued to detain the aliens after the expiration of the 90-day removal period set forth in 8 U.S.C. 1231(a)(1).[2]

---

[2] This subsection of the INA provides that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period.')." In *Zadvydas*, the government detained the petitioners beyond that 90 day removal period pursuant to 8 U.S.C. § 1231(a)(6), which permits detention for an indefinite time period beyond the 90 day removal period

*See id.* Examining the constitutionality of this scenario, the Supreme Court stated that a statute permitting the indefinite detention of an alien "would raise a serious constitutional problem." 533 U.S. at 690. In order to prevent this constitutional problem, the Court established a 6-month time period beyond which an aliens' post-removal detention would be presumed unconstitutional (yet subject to rebuttal by the government). *Id*. at 701. The Supreme Court also concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Two years later, in *Demore v. Kim*, 538 U.S. 510, 526-31 (2003), the Supreme Court addressed the constitutionality of mandatory detentions in the pre-removal order time period, the situation presented in the present case. Relying on the important governmental objective of preventing the flight of removable aliens, *Kim* held that mandatory detention without an individualized bail determination under 8 U.S.C. § 1226(c) is constitutionally permissible during the "limited period" of the removal proceedings. *Id.* at 531.

In *Kim*, a lawful resident alien asserted that the government could not, consistent with the Due Process Clause of the Fifth Amendment, detain him for the brief period necessary to complete his removal proceedings. 538 U.S. at 523. Rejecting this contention, the Court stated that:

> this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process. As we said more than a century ago, deportation proceedings "would be in vain if those accused could not be held in custody pending the inquiry into their true character." *Wong Wing v. United States,* 163 U.S. at 235 (1896); *see also Flores, supra* at 305-306; *Zadvydas,* 533 U.S. at 697 (distinguishing constitutionally questioned detention there at issue from "detention pending a determination of removability"); *id.* at 711 (KENNEDY, J., dissenting)("Congress' power to detain aliens

---

for certain categories of aliens, including criminal aliens removable under section 1227(a)(2).

> in connection with removal or exclusion. . .is part of the legislature's considerable authority over immigration matters").

*Kim*, 538 U.S. at 523.

The *Kim* Court also took pains to distinguish its facts from *Zadvydas*. *Kim* first noted that "in *Zadvydas*, the aliens challenging their detention following final orders of deportation were ones for whom removal was no longer practically attainable." *Id*. at 527. This was because no country would accept the aliens in the *post-removal period*, after the INS had issued its final order of deportation. *Id*. In *Kim*, on the other hand, the petitioner (like the petitioner in this case) challenged his mandatory detention prior to the final order of removal, at a time when the proceedings had a foreseeable end. *Id*. at 527-29. *Kim* concluded that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id*. at 528.

*Kim* further noted that while "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' ... the detention here is of much shorter duration." *Id*. The Court explained:

> *Zadvydas* distinguished the statutory provision it was there considering from § 1226 on these very grounds, noting that "post-removal-period detention, *unlike detention pending a determination of removability* ... has no obvious termination point. ... Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*.

*Kim*, 538 U.S. at 529 (emphasis in original; internal citations omitted). Accordingly, the Court concluded that "[d]etention during removal proceedings is a constitutionally permissible part of that process," and that the "INS detention of respondent, a criminal alien who conceded that he is

deportable, for the limited period of his removal proceedings," was constitutional. *Id*. at 531.

The rationale of *Kim* directs the result of this case. Like the criminal alien in *Kim*, the petitioner here is being detained *pending removal proceedings* for a time period that has a definite end: namely, until the BIA resolves the government's appeal from the IJ's decision. Once the BIA resolves this appeal, and the petitioner and the government exhaust their other avenues of review, a final order of removal may be entered and the Attorney General would be required to remove petitioner within the presumptively valid six month period set forth in *Zadvydas*. 8 U.S.C. §1231(a). In the meantime, however, Aceves-Santos is a convicted criminal, who under the immigration statute is subject to mandatory detention pending her removal proceedings because of that criminal history. *See* Govt. Ex. 1, 8 U.S.C. §1226(c). Her detention is required by the immigration statute and the courts have consistently held that this is constitutional absent a showing of inordinate or unreasonable delay. *Demore v. Kim, supra, Hussain v. Mukasey,* 510 F.3d 739(7th Cir. 2007). As the Seventh Circuit held, "even if the [administrative] delay was unconscionable, was not procured in whole or part by [petitioner] himself, and was of such a length as to infringe his rights because he was denied release throughout the protracted proceedings, it would not do to order his release now, when the removal proceedings are in their final stage." *Hussain at* 743.

Petitioner Aceves-Santos' case continues through the legal process at this point in an expeditious manner: the government reserved appeal of the immigration judge's decision dated August 4, 2008, and has filed its Notice of Appeal within the required thirty days. (Govt. Ex. 1). Pursuant to the federal regulations the BIA will set a briefing schedule, and "after completion of the record on appeal, including any briefs, motions, or other submissions on appeal, the Board member or panel to which the case is assigned shall issue a decision on the merits as soon as practicable, *with*

*a priority for cases or custody appeals involving detained aliens."* 8 C.F.R. §1003.1(e)(8). Further, the BIA is instructed by regulation to "dispose of all appeals assigned to a single Board member within 90 days of completion of the record on appeal, or within 180 days after an appeal is assigned to a three member panel . . ." 8 C.F.R. §1003.1(e)(8)(I). Thus, petitioner's argument that she has not received the benefit of procedural protections during her removal proceedings is unfounded. The procedural protections are built into the statute, the regulations and the case law, and absent a showing of an "unconscionable delay" in these proceedings, there is no basis for her release from custody. *See Hussain v. Mukasey, supra* at 742. As petitioner refers to her detention intermittently throughout her brief in the context of both *pre-order* detention and *post-order* detention she is confusing the statutory bases for her detention, and blurs the issue with a broad stroke to encompass both types of detention in an effort to bolster her claim. *Demore v. Kim, Hussain v. Mukasey,* and *Al-Bareh v. Chertoff* are all cases of reference that guide the standards for pre-order detention within the Seventh Circuit. They are cases that refer to detention during the removal proceedings, that is until a final order of removal has been entered in a case. Petitioner repeatedly references cases which involve post-order detention, an issue that is not yet ripe for consideration by the court, as there is no final order of removal at this time. Thus, when petitioner states in her brief in support of the habeas that, because the government is appealing the case, her "detention has no end in sight;" or that the government "will have a difficult time meeting its high burden in showing that the grant of relief was erroneous;" or that her detention is "'especially unreasonable' because there [is] little chance she could ever be removed,'" these are factors which are not yet ripe for consideration in the pre-final order context. *See* Petitioner's Memorandum in Support of Habeas, pp. 9-10 (quoting *Ly v. Hansen,* 351 F.3d 263, 272 (6th Cir. 2003) and citing *Nadarajah v. Gonzales,* 443 F.3d 1069 (9th

10

Cir. 2006). The government is entitled to file its appeal, just as petitioner would want to file an appeal if the decision were adverse and no relief granted to her. This necessarily means that the case is not final, the removal is not yet at issue, and the process will continue to develop until the final order which will then determine if in fact she merits any relief from removal at all.

Petitioner's detention has not yet reached the threshhold of unconstitutionality set forth in *Zadvydas, Kim* and its progeny. In sum, while the administrative process may take several weeks to complete (with an additional delay if petitioner or the government files a petition for review in the Circuit Court of Appeals), the proceedings in this case have a definite termination point, and the length of petitioner's detention to date has not yet caused a constitutional problem. *See Achim v. Ali*, 342 F.Supp.2d 769 (N.D. Ill. 2004)(holding that a 28-month detention during removal proceedings did not violate due process, where petitioner, who was ordered released on bond, was nevertheless detained pursuant to an automatic government stay of release that was definite in time – until the BIA ruled on the parties' appeals, which the BIA was reviewing in an expedited manner).

Just like the criminal alien in *Kim*, the petitioner here is being detained *pending removal proceedings* for a time period that has a definite end, and until the BIA rules on the government appeal, petitioner Aceves-Santos does not yet know what the final result of her case will be. Additionally, as the Seventh Circuit notes in its recent *Hussain* decision, *"[Kim]* holds that the principle of *Zadvydas* does not require release *pending* judicial review of the removal order . . .the difference between the two cases, as pointed out in *Kim*, is that an alien who is ordered removed could languish in detention for the rest of his life if no country could be persuaded to accept him, whereas judicial review of removal orders takes only a limited amount of time and if there is hardship to the petitioner the court can agree to expedite the proceeding." *Hussain,* 510 F.3d at 742.

And in a similar argument as the one made being made by Aceves-Santos, petitioner Hussain attempted to argue that because he had been— in his opinion— detained improperly for more than two years "due process bars his detention for another minute. . ." 510 F.3d 743.  Hussain in fact sought a type of "comp time" approach for the "unlawful denial of release during administrative proceedings." *Id.*  But, as the court held, that theory "won't wash." *Id.*  Aceves-Santos' theory doesn't wash either.

Aceves-Santos urges that the district court in this matter grant the habeas releasing her immediately, apparently on the basis that she has been wrongfully detained.  However, she cannot claim that there is no basis for her detention during removal proceedings such that the Great Writ should be utilized "to prevent detention by the Executive Branch without trial." *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir. 1999)(citations omitted).  The *Parra* decision interpreted the use of the Great Writ under Art. I, §9, cl. 2, to include preventing unlawful detention without trial in instances where there may be "claims by persons detained under §1226(c) who say they are citizens rather than aliens, who contend that they have not been convicted of one of the felonies that authorizes removal, or who are detained indefinitely because the nations of which they are citizens will not take them back in-in which resort to the Great Writ may be appropriate." *Id.*  Yet, petitioner's case does not fall within those categories at this point—she does not dispute that she was "convicted" of an aggravated felony; she has, in fact, conceded that she is removable as an aggravated felon.  However, she asserts that despite her criminal conviction for an aggravated felony, and despite her admitted history of a serious mental and psychological disorder, she should be released.  This argument does not add up, and it does not establish any deprivation or violation of her due process rights.

**II.    Petitioner's Grant of Withholding of Removal By the Immigration Judge Does Not Affect Her Detention At this Point As It Is Not Yet An Administratively Final Order.**

The petitioner has applied for and been granted withholding of removal by the immigration judge, however, that fact does not legally distinguish this case from *Kim* and *Parra* insofar as it is not yet an administratively final order.  In *Kim*, the Court explained:

> As respondent has conceded that he is deportable for purposes of his habeas challenge to § 1226(c) at all previous stages of this proceeding, ... we decide the case on that basis.  Lest there be any confusion, we emphasize that by conceding that he is "*deportable*" and, hence, subject to mandatory detention under § 1226(c), respondent did not concede that he *will ultimately be deported*.  As the dissent notes, respondent has applied for withholding of removal.

*Kim*, 538 U.S. at 522 n.6.  Here too, the petitioner has applied for and been granted the relief of withholding of removal to Mexico, but she nevertheless has conceded her removability as charged in the Notice to Appear.  An alien may be granted Withholding of Removal to a specific country if the immigration judge finds that the alien's "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. §1231 (b)(3)(A).  However, a grant of Withholding of Removal relief does not "nullify a final order of removal."  *Al-Bareh v. Chertoff,* 552 F.Supp.2d at 796.  When an alien is granted the relief "it is country specific and it strictly means that the government cannot deport the alien to that specific country." *Id.*  However, pursuant to the immigration statute, the government may still deport the alien to any one of the following countries:

(1)[t]he country from which the alien was admitted to the United States,
(2)[t]he country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States,"
(3) a "country in which the alien resided before the alien entered the country from which the alien entered the United States,"
(4)[t]he country in which the alien was born,
(5)[t]he that had sovereignty over the alien's birthplace when the alien was born,

(6) [t]he country in which the aliens' birthplace is located when the alien is ordered removed and (7) if impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country."

8 U.S.C. §1231(b)(2)(E); *see also, Al-Bareh, supra.* "An alien who is ordered removed as an aggravated felon is subject to mandatory detention pursuant to 8 U.S.C. §1231(a)(1)(A)." *Al-Bareh, supra* at 797. Once a removal order becomes final, the government has ninety days to remove that alien since the removal period begins on the latest of the following: (1) [t]he date the order of removal becomes administratively final," (2)"if the removal order is judicially reviewed and if the court orders a stay of removal, the date of the court's final order, (3) "if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). The period of removal can be extended beyond the 90 day period "if the alien fails or refuses to make a timely application in good faith for travel or other documents necessary to the aliens' departure or conspires or acts to prevent the aliens' removal subject to an order of removal." 8 U.S.C. §1231(a)(1)(C), and *Al-Bareh* at 796-797.

      Therefore, because petitioner's case is not yet final, the relief granted by the immigration judge has no effect on her removal case yet, and petitioner cannot reasonably argue that she cannot be kept in custody pending the outcome of that appeal. At best, if she prevails in the appeal, then she may be considered for removal to any other country besides Mexico at the end of her ninety day removal period. She is not at that point yet, and therefore any argument relating to the likelihood of her removal is not viable at this juncture of her case. Furthermore, petitioner's arguments regarding due process violations in the post-order context which the case of *Zadvydas v. Davis,* 533 U.S. 678 (2001) addresses are not ripe for judicial review as petitioner does not have a final order of removal and 8 U.S.C. §1231 does not yet apply to her. Petitioner's Memorandum in Support of

Habeas, pp. 7-9, and pp. 11-14. This case, as it challenges petitioner's pre-final order detention is controlled by the Supreme Court's decision in *Kim*, the Seventh Circuit's decision in *Hussain,* and as such petitioner's due process claim lacks merit and should be dismissed in its entirety.

**III.     Petitioner's Request for a "U" Visa Is Pending, and Her Medical Condition Is Stable**

The undersigned attorney has contacted the appropriate officials at the Vermont Service Center, regarding the adjudication of the petitioner's request for a "U" visa, and has been advised that review of that request has been expedited, primarily because petitioner is in custody. Furthermore, Aceves-Santos notes in her habeas petition that she has been taken off of the medication she did not like, and has been given a different medication since. Petition ¶57. Undersigned counsel followed up with counsel for petitioner to determine what if any additional medications were necessary for petitioner, and he submitted, with petitioner's consent, a Diagnosis and Progress Note Form from Wabash Valley Hospital dated June 28, 2006 which refers to petitioner's schizo-affective disorder, bi-polar type and the suggested medication. This information has been forwarded to the detention facility in an attempt to evaluate and ascertain her medication needs.

For all of the reasons set forth above, the respondents' respectfully request that this court dismiss the petition for a writ of habeas corpus in its entirety.

Respectfully Submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     s/ Sheila McNulty
        SHEILA McNULTY
        Special Assistant United States Attorney
        Chicago, Illinois
        Sheila.mcnulty@usdoj.gov

16

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002
**Notice of Appeal from a Decision of an Immigration Judge**

1. List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

   Maria Dolores ACEVES-SANTOS, A92-716-932

   For Official Use Only

   ! **WARNING:** Names and "A" Numbers of everyone appealing the Immigration Judge's decision must be written in item #1.

2. I am   ☐ the Respondent/Applicant   ☑ DHS-ICE   *(Mark only one box.)*

3. I am   ☑ DETAINED   ☐ NOT DETAINED   *(Mark only one box.)*

4. My last hearing was at   **Chicago, Illinois**   _____ *(Location, City, State)*

5. **What decision are you appealing?**

   *Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

   ☑ I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated **August 4, 2008**

   ☐ I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated _____ . (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court?   ☐ Yes.   ☐ No.)

   ☐ I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated _____ .

   *(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

Form EOIR-26
Revised Dec. 2005

Page 1 of 3



GOVERNMENT EXHIBIT

1

6. **State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

   1. The Department of Homeland Security (DHS) requests review by a three-member panel pursuant to 8 C.F.R. section 1003.1(e)(6).

   2. The Immigration Judge erred as a matter of law in granting the respondent withholding of removal under INA section 241(b)(3) and in finding that it is more likely then not the respondent will be harmed or persecuted on account of a protected ground.
      a. The immigration judge erred as a matter of law in finding the respondent met her burden of proof to show her life or freedom will be threatened upon her removal to Mexico.
      b. The immigration judge erred as a matter of law in defining "mentally ill persons who require 'acute' psychiatric or psychological care" as a particular social group.
      c. The immigration judge erred as a matter of law in finding that the respondent was a member of the particular social group because the respondent's medical condition is not immutable due to the ability to be controlled by the medication.
      d. The immigration judge erred as a matter of law in finding that the Mexican government has the inclination to harm the respondent on account of a protected ground.

   3. DHS reserves the right to raise additional points upon review of the transcript.

   *(Attach additional sheets if necessary)*

   **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7. Do you desire oral argument before the Board of Immigration Appeals?   ☐ Yes  ☑ No

8. Do you intend to file a separate written brief or statement after filing this Notice of Appeal?   ☑ Yes  ☐ No

   **WARNING:** If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9. SIGN HERE → X _____[signature]_____    9/2/08
   Signature of Person Appealing    Date
   *(or attorney or representative)*

Form EOIR-26
Revised Dec. 2005

10. **Mailing Address of Respondent(s)/Applicant(s)**

Maria Dolores ACEVES-SANTOS
(Name)

In ICE Custody
(Street Address)

101 West Congress Parkway
(Apartment or Room Number)

Chicago, IL 60605
(City, State, Zip Code)

(Telephone Number)

11. **Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s)**

Geoffrey Heeren
(Name)

111 West Jackson Blvd., Ste 300
(Street Address)

(Suite or Room Number)

Chicago, IL 60604
(City, State, Zip Code)

(Telephone Number)

**NOTE:** You must notify the Board within five (5) working days if you move to a new address. You must use an alien's Change of Address Form (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

12. **PROOF OF SERVICE**
(You Must Complete This)

I Seth B. Fitter
(Name)
mailed or delivered a copy of this Notice of Appeal

on September 2, 2008
(Date)
to Respondent and her attorney
(Opposing Party)

at The addresses listed above
(Number and Street, City, State, Zip Code)

SIGN HERE → X _____
Signature

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal will be rejected or dismissed.

☐ Read all of the General Instructions
☐ Provided all of the requested information
☐ Completed this form in English
☐ Provided a certified English translation for all non-English attachments

**HAVE YOU?**
☐ Signed the form
☐ Served a copy of this form and all attachments on the opposing party
☐ Completed and signed the Proof of Service
☐ Attached the required fee or Fee Waiver Request

Form EOIR-26
Revised Dec. 2005